## MILLER et al. v. GRAYSON et al.

No. 6856—Opinion Filed July 10, 1917.

(166 Pac. 1077.)

(Syllabus by the Court.)

1. **Champerty and Maintenance—Grants of Land Held Adversely.**

The statutes of the state, intended to prevent champerty and maintenance, and the state adjudications, rendering inoperative a deed by a grantor out of possession, as against the adverse holder of the land, are inapplicable, inoperative, and ineffective as against a sale of and a deed to restricted Indian lands made in conformity to the laws of the United States by and through its chosen governmental agencies.

2. **Parties—"Real Party in Interest."**

Plaintiff in a suit in ejectment is not "the real party in interest" as intended by section 4681, Rev. Laws 1910, unless he is a party who may be benefited or injured by the judgment of the court (citing Words and Phrases, second series, p. 132).

3. **Champerty and Maintenance—Parties—Grants of Land Held Adversely—Real Party in Interest.**

In 1905 Grayson and Bound went into possession of the surplus allotment of one Isham Nelson, a full-blood Choctaw Indian, under void deeds from Miller and Emer, full-blood Indian heirs. After the passage of the act of May 27, 1908 (35 Stat. L. 312, c. 199), the said Miller and Emer conveyed to Allen and Watkins by deed approved by the county court of Pushmataha county, and thereafter Allen and Watkins instituted suit in the name of their grantors, Miller and Emer, against Grayson and Bound for possession of the land. During the pendency of the action Miller and Emer executed another deed to the same tract of land to Grayson and Bound, which deed was attempted to be approved by the county court of Pushmataha county. Held: (1) The deed from Miller and Emer to Allen at Watkins was not champertous as to Grayson and Bound, defendants in possession of the land; (2) that Miller and Emer were not the real parties in interest, and were not authorized to institute and maintain this action.

Error from District Court, Jefferson County; Frank M. Bailey, Judge.

Suit by Daniel Miller and Charlico Emer against N. B. Grayson and J. M. Bound. Judgment for defendants, and plaintiffs bring error. On motion for rehearing, affirmed.

Former opinion, published in 165 Pac. 133, withdrawn.

W. Y Dilley, for plaintiffs in error.

Guy Green, for defendants in error.

RAINEY, J. This case is on rehearing, and for a clear understanding of the ques-

tions involved it is necessary to briefly state the material facts. The parties to the suit will be denominated as in the trial court.

Daniel Miller and Charlico Emer were plaintiffs in the district court of Jefferson county, Okla., wherein they instituted this action against the defendants herein, N. B. Grayson and J. M. Bound, to recover for the use and benefit of one F. E. Watkins an undivided two-thirds interest in and to 90 acres of land, and damages for the detention thereof. The land in controversy is the surplus allotment of one Isham Nelson, a full-blood Choctaw Indian, who was a resident of what is now Pushmataha county, Okla., at the time of his death, in the year 1904. The land was selected by and set apart to him during his lifetime, and certificates of allotment issued therefor, although the patent to the land was not issued until some time in the year 1905. Plaintiffs, Miller and Emer, who were heirs of the said Isham Nelson, deceased, were also enrolled as full-blood Choctaw Indians, and some time during the year 1905 · attempted by warranty deed to convey the land in controversy to the defendants, Grayson and Bound, but said conveyances were void and did not pass the title to the grantors, for the reason that the restrictions of one, three, and five years upon the alienation of the surplus land of the allottee, as found in section 16, Supplemental Treaty with the Choctaw and Chickasaw Nations (Act Cong. July 1, 1902, c. 1362, 32 Stat. L. 716), ran with the land, and the heirs of the deceased, Isham Nelson, were prohibited from alienating the same before the expiration of said periods. Gannon v. Johnston, 40 Okla. 695, 140 Pac. 430, Ann. Cas. 1915D, 522.

On May 7, 1909, the same plaintiffs executed another deed to Charles R. Allen, which conveyance was approved by the county court of Pushmataha county, as required by law. F. E. Watkins, for whose benefit the action was begun in the district court, was a partner of Allen, and was interested in the land, although the deeds were not taken in his name. Allen later, by a series of quit-claim deeds, conveyed all his interest in the land to Watkins. All of these conveyances, including the approved deed of plaintiffs to Charles R. Allen, are claimed by the defendants to be void, because of the adverse possession of the land by the defendants at the time of the execution of the deeds. During the pendency of the instant action the defendants, Grayson and Bound, while they were still in possession of the land, procured another deed from the plaintiffs, Miller and Emer, to the same land, and

the county court of Pushmataha county, Okla., attempted to approve this deed. On the original hearing of this case in this court it was assumed by counsel for plaintiffs and defendants that the deed executed by Miller and Emer in 1909 to Charles R. Allen was champertous, and for that reason void as against Grayson and Bound under the decisions of this court in the cases of Huston v. Scott, 20 Okla. 142, 94 Pac. 512, 35 L. R. A. (N. S.) 721, and Miller v. Fryer, 35 Okla. 145, 128 Pac. 713, and kindred cases. Since our attention has been called to the fact that counsel were in error in assuming that the deed from plaintiffs to Allen was champertous, we do not think that we are or should be bound by the action of counsel for the respective litigants inadvertently mistaking the law applicable to the case.

The deed from plaintiffs to Allen executed in 1909, and approved by the county court of Pushmataha county, Okla., under the decisions of this court in the cases of Ashton v. Noble, 46 Okla. 296, 148 Pac. 1042, and Murrow Indian Orphans' Home v. McClendon, 64 Oklahoma, 166 Pac. 1101, was not champertous and conveyed a good title to Allen.

The land having been allotted in the lifetime of the said Isham Nelson, the surplus was inalienable on December, 1905, the date of the first deed to Grayson and Bound. Under the provisions of section 22 of the act of Congress of April 26, 1906 (34 Stat. L. 137, c. 1876), providing for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory, the adult heirs of deceased Indians of either of the Five Civilized Tribes whose selection had been made were authorized to sell and convey such lands, but it was provided in said act that:

"All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

The act of Congress of May 27, 1908 (35 Stat. L. 312), was a substitute for the act of April 26, 1906, with reference to the alienation of said lands, and it was therein expressly provided:

"That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee."

From the time of the taking effect of the act of May 27, 1908, the surplus allotment of Isham Nelson could be conveyed by his full-blood heirs only on approval of their deed by

the county court of Pushmataha county. The deed from plaintiffs to Allen was executed and approved in conformity to the provisions of said act, and said conveyance, having been made in conformity to the laws of the United States, and by and through its chosen governmental agencies, is valid, and, as was decided in the case of Ashton v. Noble, supra:

"The statutes of the state, intended to prevent champerty and maintenance, and the state adjudications, rendering inoperative a deed by a grantor out of possession, as against the adverse holder of the land, are inapplicable, inoperative, and ineffective."

We have held in the cases of Bell v. Fitzpatrick, 53 Okla. 474, 157 Pac. 334, F. B. Collins Inv. Co. v. Beard, 46 Okla. 310, 148 Pac. 846, Ashton v. Noble, supra, and Murrow Indian Orphans' Home v. McClendon, supra, that where there is a conflict between the acts of Congress and the state law with reference to the alienation of these lands, the state law fails and the rights of the parties must be determined by the laws of Congress applicable thereto. In the Collins Case we said:

"When the question of the removal of restrictions from allotted lands, or the right of alienation of such lands, or the power of alienation is involved, we must look to the acts of Congress and to those acts and laws alone. In other words, if a state law, by its language, or through its proper construction or its operation, would permit the alienation of a restricted Indian allotment, or render a deed thereto effective, where the land would not be alienable, or the deed thereto effective, under the acts of Congress dealing with the subject-matter, then the state laws fail; and this because the federal government retained jurisdiction in these Indian matters to the extent stated in the Enabling Act, under the terms of which Oklahoma became a state; and this reservation of jurisdiction was assented to in the Constitution which the people adopted."

The facts in the case of Ashton v. Noble, supra, are similar to the facts in the case under consideration. There Ashton became the owner of the fee in the lands involved in that action through a purchase of the same made in conformity to the laws of the United States, and under the rules and regulations prescribed by the Secretary of the Interior, upon whom was conferred such authority by act of Congress. The only difference in the two cases is that in the case at bar the deed was approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee, the agency designated by the act of Congress of May 27, 1908, in lieu of the Secretary of the Interior, who had theretofore been authorized to and had exercised such power. There is no distinc-

tion in principle. We can add little to what was there said by the learned commissioner. We quote from the opinion:

"On this point we have no doubt but that the government of the United States, in handling the restricted lands of these Indians, could, when authority by laws of the United States is conferred so to do, arrange for the sale and approve a conveyance, passing the title to such lands without inquiring as to whether or not there are persons unlawfully holding adversely, and without regard to our state statutes relating thereto, or our adjudications holding inoperative conveyances made as against adverse holders, based upon the statute regarding champerty and maintenance. The power of the federal government over these restricted Indian lands was retained in the Enabling Act, and was agreed to by the people of this state in the Constitution which they adopted."

From the above it appears that the deed executed in 1909 by Miller and Emer, and approved by the county court of Pushmataha county, divested the plaintiffs of all their title to the land in controversy, that under the terms of said deed Charles R. Allen and F. E. Watkins became the fee-simple owners of the interest of Miller and Emer in said land, and that said deed was not champertous as to the defendants, Grayson and Bound, but was valid as to them and against all the world. It follows that when Miller and Emer subsequently attempted by deed approved by the county court of Pushmataha county to convey the same interest in the same land to the defendants, Grayson and Bound, said deed did not convey any title, but was null and void.

We are now confronted with a more serious question. We have a case where the suit was instituted in the name of the grantors, Miller and Emer, and against the defendants, Grayson and Bound, for the use and benefit of one F. E. Watkins. Counsel for plaintiffs attempt to justify this procedure under the authority of Gannon v. Johnston, supra, wherein it was held that a champertous grantee may maintain a suit against the person in adverse possession of the land conveyed in the name of his champertous grantors. But the case is not in point; for, as we have already seen, the deed from Miller and Emer to Allen was valid, and not champertous. Assuming that Miller and Emer were Watkins' grantors, even though his name was not in the deed, the question arises: May Watkins maintain the suit in the name of his grantors, Miller and Emer?

Section 4681, Rev. Laws of Oklahoma 1910, provides:

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in this article."

Under the above provision of the Code, is the grantor in a valid deed not tainted with champerty and maintenance the real party in interest authorized to maintain an action for the recovery of possession of land?

Since the Code provides that the action must be prosecuted in the name of the real party in interest, the action must fail if the plaintiffs are shown not to be the real parties in interest.

In the case of Hamilton v. Wright, 37 N. Y. 502, we find the following interesting and. instructive observations:

"It was settled before the Code was adopted that a deed of lands held in adverse possession was good against the grantor and his heirs, and against strangers, though void as against the party in possession of the land at the time of its execution; that, being void as to the latter, the grantor could maintain the action to recover the possession, and the grantee could not; but that a recovery in the name of the grantor inured to the benefit of his grantee. * * * When, therefore, the Code had, in section 111, provided, that every action should be brought in the name of the real party in interest, a doubt arose whether an action to recover lands thus conveyed could be brought by any one. If brought in the name of the grantee, he could, as against the party in possession, show no title; for, as against such party, his deed was void. If brought in the name of the grantor, it might be shown that he was not the real party in interest, because, if he recover, his recovery would inure, not for his own benefit, but for the benefit of the grantee. The Code was therefore amended so as to exclude such a conclusion, by adding to the section the provision that 'an action may be maintained, by a grantee of land, in the name of a grantor, when the grant or grants are void, by reason of the actual possession of a person claiming under a title adverse to that of the grantor at the time of the delivery of the grant.' "

Mr. Black, in his Law Dictionary, p. 997, defines the real party in interest, within the meaning of this statute, as follows:

"In statutes requiring suits to be brought in the name of the 'real party in interest,' this term means the person who is actually and substantially interested in the subject-matter, as distinguished from one who has only a nominal, formal, or technical interest in it, or connection with it."

The author of 15 Enc. Pl. & Pr. p. 710, says:

"The real party in interest, within the meaning of this provision of the Code, is the person who will be entitled to the benefits of the action if successful; one who is actually and substantially interested in the subject-matter, as distinguished from one who has only a nominal, formal, or technical interest in or connection with it."

Mr. Bliss, in his work on Code Pleading (3d Ed.) note to section 45, says:

"This raises the question, Who is the 'real party in interest'? The 'real party in interest' is the party who is to be benefited or injured by the judgment in the case."

In Words and Phrases, Second Series, p. 132, a "real party in interest" is defined as follows:

"The test of whether one is the real party in suit is: Does he satisfy the call for the person who has the right to control and receive the fruits of the litigation? The rule is stated in a recent ably written work thus: 'The real party in interest, within the meaning of the provision of the Code, is the person who will be entitled to the benefits of the action if successful; one who is actually and substantially interested in the subject-matter, as distinguished from one who has only a nominal, formal, or technical interest in or connection with it' Gross v. Heckert, 97 N. W. 952, 954, 120 Wis. 314."

In the case of M., K. & T. R. Co. v. Lenahan, 39 Okla. 283, 135 Pac. 383, this court said:

"Want of legal capacity to sue refers to a general legal disability, such as infancy, idiocy, lunacy, or want of title in the plaintiff to the character in which he sues. Therefore, when the plaintiff is a natural person, under no legal disability to maintain actions, a failure to state a cause of action in her own favor goes. to the sufficiency, in substance, of the petition, not to her legal capacity."

In Pomeroy's Code Rem., sec. 76, it is stated:

"It is no longer, consistently with the provisions of the Codes, possible for one person to sue 'to the use of' another, as was common in some states. The parties beneficially interested must themselves bring the action."

The facts in the case of Jackson et al. v. McGilbray, 46 Okla. 208, 148 Pac. 708, are similar on this point to the facts in the present case. The second paragraph of the syllabus reads:

"Plaintiff in a suit in ejectment is not 'the real party in interest,' as intended by section 4681, Rev. Laws 1910, unless he is a party who may be benefited or injured by the judgment in the case."

An examination of the record in the present case discloses that it was strenuously insisted by the defendants that plaintiffs, Miller and Emer, were not the real parties in interest in the action, and that they had

no right to institute or maintain this suit. It also appears that the suit was not only not instituted at their instance and request, but contrary to their express wishes. Even after the action was commenced plaintiffs attempted to dismiss it.

From what we have said and the authorities cited in support thereof, it follows that, while the defendants, Grayson and Bound, did not obtain any title by virtue of the deed executed to them by plaintiffs during the pendency of this action, yet the plaintiffs did not have any interest in the controversy, and, as they would not be entitled to the fruits of the litigation, they were without authority to institute and maintain the action. Since plaintiffs were not the real parties in interest, the trial court was right in rendering judgment for the defendants as against the plaintiffs, Miller and Emer, but, as Allen and Watkins are not parties to this proceeding, their right to sue for the possession of the land cannot at this time be determined.

The judgment of the trial court is affirmed.

All the Justices concur, except THACKER, J., who concurs in the conclusion, and KANE, J., absent.